IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS AT KANSAS CITY

| | |
|---|---|
| In Re: | ) |
| | ) Case No. 12-22983-rdb |
| Paul John Demo, Jr., and Jeanette Marie Demo, *Debtor* | ) |
| | ) Chapter: 13 |
| Santander Consumer USA Inc., an assignee of GEMB Lending Inc, by Santander Consumer USA Inc., loan servicing agent for *Movant* | ) |
| | ) |
| vs. | ) |
| | ) |
| Paul John Demo, Jr., and Jeanette Marie Demo, *Debtor* | ) |
| | ) |
| and | ) |
| | ) |
| William H. Griffin, *Trustee* | ) |

## MOTION FOR ORDER MODIFYING AUTOMATIC STAY AND CO-DEBTOR STAY OR IN ALTERNATIVE, ORDER GRANTING ADEQUATE PROTECTION

### COUNT I

COMES NOW, Santander Consumer USA Inc., an assignee of GEMB Lending Inc, by Santander Consumer USA Inc., its subsidiaries, affiliates, predecessors in interests, successors or assigns, ("Movant"), by and through its counsel of record, and in support of its motion, states as follows:

1.  Paul John Demo, Jr., and Jeanette Marie Demo, Debtor, is indebted to Santander Consumer USA Inc., an assignee of GEMB Lending Inc, by Santander Consumer USA Inc. in the sum of $36,868.73, plus interest. Debtor's debt is secured by a first, prior and duly perfected security interest in, to and against 2006 CrownlineJTC64909C605, and 350 MPI Bravo III Mercruiser OW623822, and a 2006 Prestige trailer JHBT23276D001812. Debtor's debt, Movant's interest, and the perfection of Movant's security interest are evidenced by the documents which are listed on the Summary of Exhibits and attached hereto.

2.  The Movant's interest in and to the Collateral is not adequately protected and the Movant will sustain irreparable harm, loss, damage and prejudice if the automatic stay imposed

by Section 362(a) of the Bankruptcy Code is not modified as hereinafter prayed. In particular:

a. The Debtor is past due for the March 24, 2013 and all payments thereafter for a total delinquency of $1,417.38, plus interest, excluding to the extent of any applicable late charges, attorney fees and/or attorney costs or other fees or costs included herein in the Note and Security Agreement.

b. The Collateral is secured beyond its value of $34,000.00 and the Debtor has no equity therein, as listed on Schedule D of the Debtor's Schedules.

3. The Debtor's Chapter 13 Plan provides for surrender of the Collateral.

4. The Debtor has failed to provide proof of insurance.

5. Movant requests the right to file an amended Proof of Claim after liquidation of the Collateral and that the claim be allowed as fully unsecured deficiency claim to be paid in conjunction with other creditors similarly classified and/or situated.

6. The Movant has sustained irreparable harm, loss, damage and prejudice by reason of the Debtor's continued possession of the Collateral, and the Movant will suffer further irreparable harm, loss, damage, and prejudice if the Court permits the Debtor to remain in possession of said Collateral.

7. The vehicle is not necessary for a successful reorganization.

8. For the above and foregoing reasons, Movant asserts cause exists sufficient to waive the requirement of Bankruptcy Rule 4001(a)(3), therefore allowing an Order to be effective upon this Honorable Court's signature.

WHEREFORE, Movant, its successors or assigns, respectfully requests the Court to enter, among others, the following orders:

(a) An order modifying the automatic stay for the purpose of allowing Movant to repossess and sell the Collateral and to apply all proceeds therefrom to the Debtor's debt;

(b) In the alternative, an order directing that adequate protection by provided including, but not limited to, compensation for physical and economic depreciation which has resulted, and will result from the continued possession and from the inability to proceed expeditiously with sale of Collateral;

(c) An order allowing Movant to file an amended proof of claim after liquidation of the Collateral and the claim be allowed as fully secured;

(d) An order waiving the 14-day stay imposed by Bankruptcy Rule 4001(a)(3).

(e) An order granting such other and further relief as the Court deems just.

## COUNT II

Movant incorporates the allegations in paragraphs 1 through 9 as fully set out herein:

9. Gary Hubbard is a co-signor of the aforementioned debt, but has failed to make payments thereon.

10. The Debtor's Chapter 13 Plan provides for surrender of the Collateral.

11. Co-signor has also failed to provide proof of insurance.

12. Movant will sustain irreparable harm, loss, damage, and prejudice if the co-debtor stay imposed by Section 1301 of the Bankruptcy Code is not modified as hereinafter prayed.

WHEREFORE, Movant, its successors or assigns, respectfully requests the Court to enter, among others, the following orders:

(a) An order modifying the Co-Debtor stay imposed by Section 1301 of the Bankruptcy Code for the purpose of allowing Movant to pursue its lawful remedies against Gary Hubbard, for so much of its debt as is not provided for by Paul John Demo, Jr., and Jeanette Marie Demo; and

(b) An order allowing Movant to file an amended proof of claim after liquidation of the Collateral and the claim be allowed as fully secured;

(c) An order granting such other and further relief as the Court deems just.

SOUTH & ASSOCIATES, P.C.
  s/Ashley B. Osborn
**Steven L. Crouch**, (MBE #37783; EDMO #2903; KSFd #70244)
**Wendee Elliott-Clement** (MBE #50311; KS #20523)
**Ashley B. Osborn** (MBE #59427; KS #23272)
6363 College Blvd., Suite 100
Overland Park, KS 66211
(913) 663-7600
(913) 663-7899 Fax
ksbkecf@southlaw.com
ATTORNEYS FOR CREDITOR

## CERTIFICATE OF MAILING/SERVICE

The undersigned certifies that the foregoing document was served electronically to those parties who have entered an appearance in the Court's Electronic Court Filing (ECF) System and conventionally, via first-class mail, postage prepaid, to those parties below who have requested notice but are not participating in the ECF System, on the date entered on the Court's docket.

SOUTH & ASSOCIATES, P.C.
     s/Ashley B. Osborn
**Steven L. Crouch**, (MBE #37783; EDMO #2903; KSFd #70244)
**Wendee Elliott-Clement** (MBE #50311; KS #20523)
**Ashley B. Osborn** (MBE #59427; KS #23272)
6363 College Blvd., Suite 100
Overland Park, KS 66211
(913) 663-7600
(913) 663-7899 Fax
ksbkecf@southlaw.com
ATTORNEYS FOR CREDITOR

File No. 158740
Case No: 12-22983-rdb

Paul John Demo, Jr.
Jeanette Marie Demo
18175 W. 156th Street
Olathe, KS 66062
**DEBTOR**

Gary Hubbard
102 Brown Ave.
Osawatomie, KS 66064
**CO-DEBTOR**

W. Brett Chapin
Chapin Law Firm
11212 Johnson Drive
Shawnee, KS 66203
**ATTORNEY FOR DEBTOR**

William H. Griffin
6330 Lamar, Ste 110
Overland Park, KS 66202-4286
**TRUSTEE**

File No. 158740
Case No: 12-22983-rdb

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS AT KANSAS CITY

| | |
|---|---|
| In Re: | ) |
| | ) |
| Paul John Demo, Jr., and Jeanette Marie Demo, *Debtor* | ) |
| | ) Case No. 12-22983-rdb |
| | ) |
| Santander Consumer USA Inc., an assignee of GEMB Lending Inc, by Santander Consumer USA Inc., loan servicing agent for *Movant* | ) Chapter: 13 |
| | ) |
| vs. | ) |
| | ) |
| Paul John Demo, Jr., and Jeanette Marie Demo, *Debtor* | ) |
| | ) |
| and | ) |
| | ) |
| William H. Griffin, *Trustee* | ) |

### SUMMARY OF EXHIBITS AND CERTIFICATE OF SERVICE

Pursuant to L.B.R. 9040-1, the following exhibits to the Motion for Order Modifying Automatic Stay are otherwise available upon request:

1. Retail Installment Contract/Security Agreement dated March 27, 2006
2. UCI Financing Statement
3. Bill of Sale

Respectively submitted,


SOUTH & ASSOCIATES, P.C.
s/Ashley B. Osborn
Steven L. Crouch, (MBE #37783; EDMO #2903; KSFd #70244)
Wendee Elliott-Clement (MBE #50311; KS #20523)
Ashley B. Osborn (MBE #59427; KS #23272)
6363 College Blvd., Suite 100
Overland Park, KS 66211
(913) 663-7600
(913) 663-7899 Fax
ksbkecf@southlaw.com
ATTORNEYS FOR CREDITOR


A copy of the above served this on June 24, 2013 to:


File No. 158740
Case No: 12-22983-rdb

Paul John Demo, Jr.
Jeanette Marie Demo
18175 W. 156th Street
Olathe, KS 66062
**DEBTOR**

Gary Hubbard
102 Brown Ave.
Osawatomie, KS 66064
**CO-DEBTOR**

W. Brett Chapin
Chapin Law Firm
11212 Johnson Drive
Shawnee, KS 66203
**ATTORNEY FOR DEBTOR**

William H. Griffin
6330 Lamar, Ste 110
Overland Park, KS 66202-4286
**TRUSTEE**

File No. 158740
Case No: 12-22983-rdb

| RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT No. | Seller: Bruce Marine Inc. 6707 Prospect Kansas City, MO 64132 "We" and "us" mean the Seller above, its successors and assigns. | Buyer: Gary W Hubbard and/or Paul Demo 102 Brown Ave Osawatomie, KS 66064 "You" and "your" mean each Buyer above, and each guarantor, jointly and individually. |
|---|---|---|

**SALE:** You agree to purchase from us, on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the goods (Goods) and services described below. The Goods are sold in their present condition, together with the usual accessories and attachments.

| Description of Goods or Services Purchased | Serial or Unit No. | Motor or Cabinet No. | Price of Each Unit |
|---|---|---|---|
| New 2006 23' Crownline serial#US-JTC64909C606/New 350 MPI Bravo III Mercruiser (300 h.p.) serial#OW623822/New 2006 Prestige trailer serial#4JHBT23276D001812 | | | |

Description of Other Collateral (Not household goods)

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Goods purchased and any other collateral described above, and all accessions, attachments, accessories, and equipment placed in or on the Goods or other collateral, together called Property, and proceeds of the Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ 47,275.00 , plus finance charges accruing on the unpaid balance at the rate of 8.75 % per year from today's date until paid in full. Finance charges accrue on a 365 day basis. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**MINIMUM FINANCE CHARGE:** You agree to pay a minimum finance charge of $ N/A if you pay this Contract in full before we have earned that much in finance charges.

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED.

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE The total cost of your purchase on credit, including your down payment of $4,800.00 |
|---|---|---|---|---|
| 8.75 % | $ 37,767.80 | $ 47,275.00 | $ 85,042.80 | $ 89,842.80 |

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due Monthly Beginning |
|---|---|---|
| 180 | 0472.46 | April 26, 2006 |

**Security:** You are giving a security interest in the Goods purchased with this Contract until paid in full.

**Late Charge:** If a payment is more than 10 days late, you will be charged $10.

**Prepayment:** If you pay off this Contract early, you will not have to pay a Minimum Finance Charge.

**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

**CREDIT INSURANCE:** Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

Credit Life: Insured _____
☐ Single ☐ Joint Prem. $ 0.00 Term _____
Credit Disability: Insured _____
☐ Single ☐ Joint Prem. $ 0.00 Term _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

Buyer _____ d/ob Buyer _____ d/ob

**PROPERTY INSURANCE:** You must insure the Property securing this Contract. You understand that you are free to insure your Property with whatever licensed company, agent, or broker you may choose; that you may do so at any time after the date of this loan; that you have not canceled any existing insurance on your Property if you owned it before this loan; and that this loan cannot be denied you simply because you did not purchase your insurance through us. YOU MAY NOT NEED TO PURCHASE PROPERTY INSURANCE, AND YOU MAY HAVE OTHER INSURANCE WHICH WE WILL ACCEPT WHICH COVERS THE PROPERTY SECURING THIS LOAN. YOU SHOULD EXAMINE ANY OTHER INSURANCE WHICH YOU HAVE IN ORDER TO DETERMINE IF THIS COVERAGE IS NECESSARY. The deductible amount of this insurance may not exceed $ 500.00 . If you get insurance from or through us you will pay $ n/a for _____ n/a _____ of coverage.

This premium is calculated as follows:
☐ Fire-Theft and Combined Additional Coverage $ n/a
☐ _____ $ n/a
☐ _____ $ n/a

☐ **SINGLE-INTEREST INSURANCE:** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ na for n/a
_____ n/a _____ of coverage.

**ASSIGNMENT:** By signing below, the Seller/Creditor accepts this Contract and for value received transfers and assigns all of its right, title, and interest in this Contract and the Property to Assignee selected below. This transfer is made pursuant to and is subject to a separate Agreement between Seller and Assignee by which Assignee has agreed to accept the transfer and assignment of contracts from Seller.

ASSIGNEE:
☐ GE Money Bank, c/o 332 Minnesota Street, St. Paul, MN 55101; 800-950-1233
☒ GEMB Lending Inc., c/o 3355 Michelson Dr., Second Floor, Irvine, CA 92612;

### ITEMIZATION OF AMOUNT FINANCED

Goods and/or Services Price $ 51,980.00
(including sales tax of $ 1822.00 )
Service Contract, Paid to: _____ $ 0
Amount to Finance line e. (if e. is negative) $ 0
Cash Price $ 51,980.00
Manufacturer's Rebate $ 0
Cash Down Payment $ 3800.00
Deferred Down Payment $ 0
a. Total Cash/Rebate Down $ 3800.00
b. Trade-In Allowance $ 25,873.00
c. Less: Amount owing $ 24,873.00
Paid to: Bank of America
d. Net Trade-in (b. minus c.) $ 1000.00
e. Net Cash/Trade-In (a. plus d.) $ 4800.00
Down Payment (e.; disclose as $0 if negative) $ 4800.00
Unpaid Balance of Cash Price $ 47,180.00
Paid to Public Officials - Filing Fees $ 95.00
Insurance Premiums: $ 0
To: _____ $ 0
To: _____ $ 0
To: _____ $ 0
To: _____ $ 0
Total Other Charges/Amounts Pd. to Others $ 95.00
Less: Prepaid Finance Charges $ 0
Amount Financed $ 47,275.00
*We may retain or receive a portion of this amount.

☐ **SERVICE CONTRACT:** With your purchase of the Goods, you agree to purchase a Service Contract to cover _____
_____. This Service Contract will be in effect for _____ .

*ABOUT YOUR ANNUAL PERCENTAGE RATE OF FINANCE CHARGE: The Seller may set the Annual Percentage Rate. You and the Seller may negotiate the Annual Percentage Rate. The Seller may retain the right to receive a portion of the Finance Charge if the Seller assigns this Contract.*
**NOTICE TO THE BUYER: (1) DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. (2) YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. (3) UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CIRCUMSTANCES TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE.**
BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.

Buyer Signature _____ 3-27-06 Date
Signature _____ 3-27-06 Date

Seller: By Bruce Marine Inc. _____

## ADDITIONAL TERMS OF THIS CONTRACT AND SECURITY AGREEMENT

**GENERAL TERMS:** You have been given the opportunity to purchase the Goods and described services for the Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Goods and any services if you buy them over time. You agreed to purchase the items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee, that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal has been paid in full, refund it to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until you pay in full.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:
A. Our security interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or affixed to the Goods.
B. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.
C. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
D. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.
E. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent. You will not permit the Property to become attached to any real estate without first providing us an opportunity to preserve our first priority status.
F. You will pay all taxes and assessments on the Property as they become due.
G. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
A. You fail to perform any obligation that you have undertaken in this Contract.
B. We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including court costs, attorneys' fees (not exceeding 15% of the unpaid balance if referred to an attorney not a salaried employee of ours), and fees for repossession, repair, storage and sale of the Property securing this Contract.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have, subject to any right to cure that you may exercise, all of the remedies provided by law and this Contract:
A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. This amount will be due immediately. This amount will earn finance charges from the date paid at the rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.
C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
D. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward your obligations.

E. Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

**RETURNED CHECK CHARGE:** If you make any payment required by this Contract with a check or negotiable instrument that is returned or dishonored, you agree to pay the actual charges for processing the check or negotiable instrument, plus a fee of $15.00.

**INSURANCE:** You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this Contract is paid in full.

**COLLATERAL PROTECTION INSURANCE:** Unless you provide evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:
A. You must pay this Contract even if someone else has also signed it.
B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
C. We may release any security and you will still be obligated to pay this Contract.
D. If we give up any of our rights, it will not affect your duty to pay this Contract.
E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTY:** Warranty information is provided to you separately.

**WAIVER:** To the extent permitted by law, you agree to give up your rights to require us to do certain things. We are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time or manner; or, (3) give notice that we intend to make, or are making, this Contract immediately due.

**Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**ARBITRATION. Please read this carefully.** Subject to the exceptions discussed below, any legal dispute or claim of any kind that relates in any way to your credit application, this Contract or your relationship with us or any assignee of this Contract will be resolved by binding arbitration if either you or we elect to arbitrate. The following describes the arbitration procedure, and its implications:

• If either of us elects to arbitrate, you or we must notify the other parties. You must do this by sending notice to *Legal Operations, 332 Minnesota St., Suite 600, St. Paul, MN 55101.* Notice can be given after a lawsuit has been filed, in which case it can be made in papers in the lawsuit.

• The person who starts the arbitration proceeding must choose an administrator, which can be either the National Arbitration Forum, P.O. Box 50191, Minneapolis, MN 55405, www.arb-forum.com . . . . . . . . . , or the American Arbitration Association, 335 Madison Avenue, New York, NY 10017, www.adr.org. The actual arbitrator will be selected under the administrator's rules, and must be a lawyer with at least ten years of experience.

• The arbitrator must follow the applicable law as if this matter had been brought in court as long as it is consistent with the Federal Arbitration Act, 9 U.S.C. §§1 *et seq* ("FAA"), this arbitration provision and the Administrator's rules. The arbitrator is authorized to award any and all remedies that would apply if the action were in a court (including, without limitation, punitive damages, which shall be governed by the constitutional standards employed by the U.S. Supreme Court).

• The arbitration will take place in a location reasonably convenient to you. If you ask us, we will pay all filing, administrative, hearing and/or other fees the Administrator or arbitrator charges up to $2,500. If the cost is higher, you can ask us to pay more and we will consider your request in good faith. Under all circumstances we will pay all amounts we are required to pay under applicable law.

• These claims involve interstate commerce and this arbitration provision is governed by the FAA.

• A court may enter judgment upon the arbitrator's award. The arbitrator's decision will be final and binding except for: (1) any appeal right under the FAA; and (2) any party may appeal decisions relating to claims of more than $100,000 to a three-arbitrator panel appointed by the Administrator, which will reconsider any aspect of the appealed award. If you appeal, we will consider in good faith a request by you for us to pay any or all additional fees imposed by the Administrator or arbitrator.

**IMPORTANT LIMITATIONS AND RESTRICTIONS:** If a claim goes to arbitration, neither of us will have the right to: (1) have a court or a jury decide the claim; (2) engage in discovery (i.e., the right to obtain information from the other party) to the same extent that you or we could in court; (3) participate in a class action in court or in arbitration, either as a class representative or a class member; (4) act as a private attorney general in court or in arbitration; or (5) join or consolidate your claim(s) with claims of any other person. The right to appeal is more limited in arbitration than in court. Other rights that you would have if you went to court may also not be available in arbitration. Only a court may determine the validity and effect of the parts 3, 4 and 5 of this paragraph. If a court should hold such part(s) to be invalid, then the entire provision shall be null and void. However, this will not limit the right to appeal such holding.

**Exceptions to this Provision:** This provision is subject to two exceptions: (1) certain claims are excluded, and (2) you may reject this provision in its entirety in which case your claims are subject to arbitration.

**Claims Not Subject to Arbitration:** The following claims are excluded from this provision: (1) claims brought in a small claims court or its equivalent, unless this claim is transferred, removed, or appealed to a different court; and (2) claims seeking to enforce our security interest in the Property secured by this Contract. The institution and maintenance of any action in court shall not constitute a waiver of the right of any party to compel arbitration regarding any other claim subject to arbitration, including the filing of a counterclaim in a suit brought by us.

**Right to Reject Arbitration: You may reject this arbitration provision, in which event neither you nor we will have the right to require arbitration.** Rejection will not affect any other aspect of these terms. To reject the arbitration provision, you must send us a notice that we receive within 60 days after you opened your account. The notice must include your name, address, and account number and be mailed to Arbitration Opt Out, P.O. Box 981429, El Paso, TX 79998-1429. In the event of any dispute concerning whether you have provided a timely notice, you must provide a signed receipt. This is the only method you can use to reject the arbitration provision. If the notice is sent on your



COPY BOS

```
04-28-2006    09:33:00
              $20.00
              01

              Page 1 of 1
              04/27/2006 4:23:39 PM
              BOOK 1
              61 UCC 1
              $0
```

FILED Kansas
Secretary of State

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone:

**B. SEND ACKNOWLEDGEMENT TO:** (Name and Address)

17516 GEMB Lending I

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

8276075

KSKS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| HUBBARD | GARY | W | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 102 BROWN AVE | OSAWATOMIE | KS | 66064 | |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
| | | | | □ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
| | | | | □ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| GEMB Lending, Inc | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P.O. Box 57082 | Irvine | CA | 92619 | |

**4. This FINANCING STATEMENT covers the following collateral:**

2006 23' CROWNLINE JTC64909C606  MERCRUISER 350 HP 0W623822  2006 PRESTIGE TRAILER 4JHBT23276D001812

**5. ALTERNATIVE DESIGNATION (if applicable):** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

**6.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable]  **7.** Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**
GEMB LENDING INC

# BILL OF SALE AND

## ASSIGNMENT AND ASSUMPTION AGREEMENT

BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Bill of Sale"), dated as of December 30, 2010, among (i) GE Money Bank, a Federal savings association ("**GE Money**"), GEMB Lending, Inc., a Delaware corporation ("**GEMBL**"), Monogram Credit Services, LLC (together with GE Money and GEMBL each, a "**Seller**" and collectively, the "**Sellers**") and (ii) Santander Consumer USA Inc., an Illinois corporation ("**Buyer**").

## W I T N E S S E T H :

WHEREAS, Buyer and Sellers have concurrently herewith consummated the purchase by Buyer of the SCUSA Purchased Assets pursuant to the terms and conditions of the Asset Purchase Agreement dated December 30, 2010 among Buyer, Sovereign Bank and Sellers, (the "**Asset Purchase Agreement**"; terms defined in the Asset Purchase Agreement and not otherwise defined herein being used herein as therein defined); and

WHEREAS, pursuant to the Asset Purchase Agreement, Buyer has agreed to assume certain liabilities and obligations of Sellers with respect to the SCUSA Purchased Assets.

NOW, THEREFORE, in consideration of the sale of the SCUSA Purchased Assets and in accordance with the terms of the Asset Purchase Agreement, Buyer and Sellers agree as follows:

1. Each Seller does hereby sell, transfer, assign and deliver to Buyer all of its right, title and interest in, to and under the SCUSA Purchased Assets and Assigned IP Rights sold by such Seller pursuant to the Asset Purchase Agreement.

2. Buyer does hereby accept all the right, title and interest of the Sellers in, to and under all of the Purchased Assets and Assigned IP Rights, and Buyer assumes and agrees to pay, perform and discharge promptly and fully when due all of the SCUSA Assumed Liabilities.

3. Each Seller hereby covenants that, from time to time after delivery of this Bill of Sale, at the reasonable request of Buyer and without further consideration, such Seller shall do, execute, acknowledge and deliver, or cause to be done, executed, acknowledged and delivered, any and all such further reasonable acts, instruments, conveyances, endorsements and other things or writings reasonably requested by Buyer in order to evidence and effectuate the conveyance of the SCUSA Purchased Assets and Assigned IP Rights. Additionally, each Seller hereby irrevocably constitutes and appoints Buyer and any officer or agent thereof, with full power of substitution, as its true

and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of such Seller or in Buyer's own name, to execute, acknowledge and deliver, or cause to be done, executed, acknowledged and delivered, any and all such further instruments, conveyances, endorsements, and other things or writings reasonably required by Buyer in order to (a) perfect an enforceable first-priority security interest in or evidence the transfer of title to the vehicles comprising collateral for the SCUSA Transferred Receivables, and (b) protect, preserve, or realize upon the SCUSA Purchased Assets and Buyer's security interest therein.

4. Nothing contained in this Bill of Sale diminishes or affects any statements, certifications, representations, warranties, covenants, agreements or indemnifications by Buyer, Sovereign Bank or Sellers, each of which shall survive the delivery of this Bill of Sale in accordance with the terms of the Asset Purchase Agreement, and none of which have merged into this Bill of Sale. This Bill of Sale does not create any independent rights or remedies other than those specifically set forth in the Asset Purchase Agreement.

5. This Bill of Sale shall be governed by and construed in accordance with the law of the State of New York, without regard to the conflicts of law rules of such state.

6. This Bill of Sale may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

[Signature page follows]

IN WITNESS WHEREOF, the parties hereto have caused this Bill of Sale to be duly executed as of the day and year first above written.

GE MONEY BANK

By: *[signature]*
Name: Glenn P Marino
Title:

GEMB LENDING, INC.

By: _____
Name:
Title:

MONOGRAM CREDIT SERVICES, LLC

By: *[signature]*
Name: Glenn P Marino
Title:

IN WITNESS WHEREOF, the parties hereto have caused this Bill of Sale to be duly executed as of the day and year first above written.

GE MONEY BANK

By: _____
   Name:
   Title:

GEMB LENDING, INC.

By: _*Thomas Patton*_
   Name: THOMAS PATTON
   Title: PRESIDENT

MONOGRAM CREDIT SERVICES, LLC

By: _____
   Name:
   Title:

SANTANDER CONSUMER USA INC.

By: _____
Name: Eldridge A. Burns, Jr.
Title: Chief Legal Officer & Secretary